[ PHILADELPHIA, MAY 2D, 1840. ]

## DYER *against* DEPUI.

### IN ERROR.

1. J. D., who was the owner of a large tract of land, conveyed a part of it to the plaintiff, "together with the privilege of a part of the water flowing along a certain ditch or water-course from J. H.'s line through and across the said J. D.'s other land, on condition that the said M. D., (the plaintiff) his heirs and assigns, will at all times be subject to and defray one-half the expense of keeping or repairing the dam, and clearing out the said ditch or water-course.".."To have and to hold the said tract or parcel of land, with privilege of part of the water, as aforesaid." Previously to this deed, a dam had existed on the land of J. D., by which the water was diverted to that part of it sold to the plaintiff. J. D. afterwards died, having by his will devised to S. D. (his son) a tract of land lying between the plaintiff's land and the defendant's, "together with a drain or water-course from J. H.'s line, through and across the lot of land hereinafter devised to my son J. D.," (the defendant) "as the same now runs, with a privilege on each side of the said drain or water-course, one perch in width, for passing and repassing to mend and repair and clear out the said drain or water-course, as often as the same may be necessary, and without any let or hindrance of him the said J. D., his heirs or assigns," "with the water drain and privilege aforesaid to him the said S. D. and his heirs and assigns, &c., subject to the water drain now open and running through and across the first mentioned lot to M. D.'s line." He then devised to the defendant J. D. another portion of land adjoining, "and subject to the aforementioned drain or water-course from J. H.'s line, through and across the first mentioned lot of land, with the privilege granted to my son S. D., his heirs and assigns, of a passage or cart-way, one perch wide, on each side of said drain, for cleaning or repairing the same." *Held*, that the right conveyed to the plaintiff by the deed of J. D. was not restricted to the watering of cattle, but that it was a right to use a portion of the water in the way it was customary and necessary to use it for the benefit of the land conveyed ; and that if to do so it was necessary to conduct it on or along the defendant's farm by a trench, if that was the only way in which he could beneficially use the privilege, he might cut the trench to conduct the water, and might renew and repair the dam for the purpose.

2. If a person entitled to raise water to a certain height by means of a dam, raises it higher than he is entitled to do, the person injured may reduce the dam to the proper height, but has not the right to demolish it.

3. The rule in Pennsylvania is, that a non-user of an incorporeal hereditament for *twenty-one* years creates a presumption to defeat the right. Non user for *twenty* years is not sufficient.

ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action on the case, brought by Moses Depui against Joseph Dyer.

(Dyer *v.* Depui.)

The plaintiff declared, that whereas he " the said Moses, before and at the time of the committing of the grievances hereinafter mentioned was, and from thence hitherto hath been and still is lawfully possessed of a certain farm and tract of land situate in the township of Moreland, in the county of Philadelphia, containing forty-two acres and sixty-one perches, with the appurtenances; and by reason thereof, before and at the time of committing the grievances hereinafter mentioned, of right ought to have and enjoy the benefit and advantage of the water of a certain stream or watercourse in the county aforesaid, which during all that time of right ought to have run and flowed, and until the diverting thereof hereinafter mentioned, of right had run and flowed and still of right ought to run and flow upon and over the land of the said Moses, for supplying the same with water.  Yet the said Joseph Dyer, well knowing the premises, but contrary and wrongfully and unjustly intending to injure the said Moses in this respect, and to deprive him of the use, benefit and advantage of the water of the said stream, and put him the said Moses to great expense, trouble and inconvenience, on the first day of January, in the year one thousand eight hundred and thirty-four, at the county aforesaid, and on divers other days and times between that day and the bringing this suit, wrongfully and unjustly diverted and turned divers large quantities of the water of the said last mentioned stream or water-course out of the same and away from the said farm and tract of land of the said Moses, and hindered and prevented the water of the last mentioned stream or water-course from running or flowing along its usual course upon and over the farm and land of the said Moses, and from supplying the same with water for the purposes of the said farm, as the same ought to have done, and otherwise would have done; and by reason thereof the water of the said last mentioned stream, nor did run or flow to and upon and over the said farm of the said Moses, as the same ought to have done and otherwise would have done; and the said Moses for want of such water could not carry on his business of farming in so beneficial a manner as he ought to have done, and otherwise would have done, to the damage of the said Moses, five thousand dollars," &c.

The defendant pleaded not guilty, with leave; and the cause came on for trial before Jones, J., on the 29th of January, 1838.

The facts of the case are believed to be sufficiently stated in the charge of the learned judge, which was in substance as follows :

It appears that many years ago, (some forty years,) the land now held by the plaintiff and defendant in this case, as well as that now owned by Mr. John Chappell, belonged to James Dyer, deceased. While he owned it a dam was erected across the little stream so often spoken of and described by the witnesses, by which the water

was diverted from its natural course along sloping land, for the purposes of irrigation. At the decease of James Dyer, the estate descended to Joseph Dyer, Sen., the father of the defendant. Joseph Dyer, Sen. sold a part of the land to the plaintiff in this case, which has been described to you from the deeds and drafts exhibited. The date of the deed is February 22d, 1813. In this deed, under which the plaintiff claims the water right which he complains has been infringed, is the following clause:

" Together with the privilege of a part of the water flowing along a certain ditch or water-course, from John Hogeland's line through and across the said Joseph Dyer's other land, on condition that the said Moses Depui, his heirs and assigns, will at all times be subject to and defray one-half the expenses of keeping or repairing the dam and clearing out the said ditch or water-course." " To have and to hold the said tract or parcel of land above described, with privilege of part of the water as aforesaid."

The defendant is the owner of the land upon which the dam was built by James Dyer, and on which the first part of the race is. He claims title under Joseph Dyer, Sen., by devise. The will of Joseph Dyer, Sen., is dated the 9th of January, 1813. It appears to have been proved February 7th, 1815. The right of the plaintiff, therefore, (whatever it may be) is prior to the right of the defendant. It was a right which he might claim adversely to Joseph Dyer, Sen., from the time of the grant by him to the plaintiff. The original dam was however afterwards taken down, and another dam was erected at or near the place where the first dam stood, by Samuel Dyer, who likewise became owner of a part of this estate of Joseph Dyer, Sen., by will, and S. Dyer's is that now owned by Mr. John Chappell; it lies between the lands of the plaintiff and the defendant. Some of the witnesses say that one end of the dam built by Samuel Dyer was on the old foundation, but the other end a little further up the stream. Other witnesses speak of it (in general terms) as being higher up. This dam was suffered to fall down, and was not used; the ditch or race connected with it was in part filled up, or effaced by ploughing over it; and about four years ago, last fall, Mr. Depui, the plaintiff, built another dam on or near the same place, which was taken down by some persons unknown. The plaintiff then rebuilt it again, and it was then taken down by the defendant. At the time of erecting the dam, the plaintiff cleared out the old ditch or race as far as it could be traced on the ground, and where it could not be, he dug a new one, which he extended through Mr. Chappell's land, and over his own land to his barn. None of the witnesses say that the ditch was ever dug so far before; some say it terminated formerly in John Chappell's land, several yards short of the dividing line between Chappell and Depui. Some of the witnesses (John Holt and James Depui) say, that some twenty-five or twenty-six years ago the ditch extended to Depui's fence. This dam, it is

conceded, the defendant removed, and thereby restored the water to the natural channel of the creek; and this is the wrong complained of. The defendant, on the other hand, contends, that he had the right to demolish the dam, because it was a nuisance to him. It appears that Mr. Dyer, the defendant, owned a piece of valuable land on the opposite side of the road from Mr. Depui's. This land, according to some if not all of the witnesses, was very much injured by the water which descended from Depui's and Chappell's land; and this is the chief if not the only injury specified as resulting from the race and dam, as put in order by Mr. Depui. This land (so injured) it is also said, was formerly a swamp; and John Holt, speaking of it as it was, some twenty-five or thirty years since, says that the water then ran down and crossed the road and ran over it. But whatever was the condition of the lot then, the witnesses say that now it is tillable, fertile land, yielding good crops, and that the water which passed over it during the continuance of Depui's dam and race was an injury to it. The question for us to determine is, whether Mr. Depui exercised merely his rights under the deed by erecting the dam and making the race; for if he did no more than he had a right to do, the loss which Mr. Dyer sustained in consequence of the dam would not make the dam a nuisance which he might abate or remove. We must therefore settle this matter in the first place. The grant is "a privilege of part of the water flowing along a certain ditch or water-course, from John Hogeland's line through and across the said Joseph Dyer's other land." This grant is not so explicit as grants of this nature are sometimes drawn; but in all such cases the object is to ascertain what the intention of the parties was; and it belongs to the Court to give the construction. It is proper to say in this place, (with reference to a part of the arguments of the counsel,) that Joseph Dyer, Sen., had the power to convey a privilege or right to use the water in the fullest extent that the nature of the thing would admit, upon his own land, whatever might be the effect upon himself. It is perfectly true that he could not grant a right which would infringe the rights of other adjoiners upon the stream; and if any stranger were to be injured by the exercise of the right which the deed purports to grant, the deed would not protect Mr. Depui. But as it respected Joseph Dyer, Sen., and those who claim under his will, the grant in the deed to the privilege of the water is lawful. The defendant therefore cannot justify his act in abating this dam as a nuisance, because it might be a nuisance to other persons owning land on this creek. The issue to be tried involves only the rights of these particular parties. If the defendant was not injured in his rights by the dam and race of Depui, he cannot complain that other persons were. What, then, (to return to the question) did this deed grant? for so far it was good as against Joseph Dyer, Sen., the grantor, and for the purposes of this controversy between these parties. The defendant contends,

that the grant has respect to the dam as it stood, and the water-course as it actually existed at the date of the deed (22d of February, 1813.) He contends, as a matter of fact, that the water-course terminated in the tract now owned by John Chappell, and before it reached Depui's land. Hence he concludes that the plaintiff had no right to have the water-course extended further; and that the only right which the plaintiff acquired by the deed, was to enter upon the land where it terminated and take the water out of the trench there. It is contended that to *that* place the plaintiff must go for water; that he might drive his cattle there to drink, but that he had no right to conduct the water further. The intention of the parties plainly appears to have been to annex this water privilege to the land conveyed by the deed. It gave Mr. Depui the right to have the water on his land for the uses and purposes of the land. The clause contains the words "through and across" the said Joseph Dyer's other land. The meaning of these words is, that the ditch or water-course actually existing or intended, did extend actually, or was intended to be extended to the margin of Joseph Dyer's other land. The defendant's construction is unreasonable, and it can hardly be supposed that he would insist upon it if he were the owner of this intermediate tract instead of Mr. John Chappell. It would be more onerous to him to be subjected continually to a right of way and of entry into his own land, for the purposes of watering cattle, and for other farming purposes, which must take place daily, than to be subject to a right to convey the water through by a ditch, and then to be taken and used by Depui upon his own land. The witnesses differ as to the fact of the extent of the water-course. Some say it extended to the line of the plaintiff's land, but most of them say it stopped short of the line. The deed itself is evidence of what the fact was. The will which has been read states that the race came up to Depui's line. But the fact is not important, because if it were not so, the deed gave the plaintiff the right to have the water-course extended in the shortest conveniently practicable manner to his own line. There is another clause in the deed which deserves a remark or two, as it throws light upon this, as well as another question discussed. The phrase is, "together with the privilege of a part of the water;"—'a part of the water' is an indefinite expression. No aliquot part is granted. We cannot say from the deed itself whether the parties intended the half or the third, or any other particular part. But what I wish particularly to say is, that these words would be very inapt to express the grant of a right to water cattle at the end of the water-course, or to dip it out at that place and carry it away, as has been contended. But these words, when considered in reference to the land granted to Depui, and the other land of the grantor, and the purposes served by this water-course on the land of the grantor lying between Depui and the dam, the expression, though indefinite, is natural, and admits of

(Dyer *v.* Depui.) ·

a reasonable construction. There was no mill on the land belonging to the defendant and John Chappell, nor does it appear that there was any use which the water could serve, but the purposes of irrigation and other farming purposes; and the meaning of the clause is, that Joseph Dyer, Sen. would not use the whole of the water, but allowed a reasonable and fair proportion of it to flow on, to the land of Mr. Depui, the grantee. If there was water enough in the creek which could be diverted through this water course, to answer fully the purposes of both farms, then both were to be fully served. If the water was deficient, then the grantor could not take the whole to himself, but must leave a fair proportion to Mr. Depui, the grantee. Such is the effect of the deed. Incident to this right, and connected with it, the plaintiff had the right to have the dam and the water-course maintained. If this dam fell or was injured, he had a right to insist that it should be erected or repaired. If the water-course became obstructed on the lands of the grantor, or otherwise got out of order, he might want that it should be put in order, but he was bound to pay half the expense. If the grantor had refused or neglected after notice to do the necessary repairs or half of them, the grantee might lawfully make them himself, and the law would give him a right to contribution. But Mr. Depui would have no right to erect a dam in another place, or to dig a water-course over the grantor's land in another place. Another question has been made, touching the height of this dam. It is said that the dam erected by the plaintiff was of greater height than the dam which existed at the date of the grant. This question is not important : cases occur frequently in which the merits of the controversy turn upon the exact height of a dam ; but they are cases where the owner of the land above the dam complains that he is injured, by having the water swelled back upon his land or his mill. In this case however, the stream, as it it appears in evidence, is very small at ordinary times. It appears to be of value, and to have been used only for the benefit of the land ; and it cannot reasonably be supposed that the height of the dam entered into the contemplation of the parties, except so far as this, that it should be of such height as should answer the main purpose, viz., of diverting the water from the natural channel through the water-course mentioned in the deed, in sufficient quantity for the reasonable uses of both farms. If it were higher than such necessity required, and in consequence more water was diverted than was needful or useful for the lands, the defendant had the right to reduce the height, so as to prevent injurious excess. These are the points of law raised upon the plaintiff's part of the case. Briefly stated it is thus:

1. The deed gave the plaintiff the right to have the water conducted from the creek at the dam, to his land, through the water-course mentioned in the deed, for the reasonable and customary purpose of the land conveyed. ·

(Dyer *v.* Depui.)

2. The plaintiff has a right under the deed, to insist upon the maintaining and repairing of the dam and race, so as to secure the transmission of a reasonable and fair proportion of the water to his land.

3. If the owners of the other land of the grantor, mentioned in the deed, neglect or refuse to maintain it, or to do their part towards it, the plaintiff has the right to do it himself; but he has no right to erect a dam at another place, or to dig a watercourse over another part of the intervening land.

4. The precise height of the dam is not important. If it were greater than the height of the original dam, to the injury of the defendant, even in that case, if the dam was erected on the original foundation, the defendant had the right only to reduce it to the proper height, not entirely to demolish it.

I must now call your attention to the defence. It is said in the first place that this right of the plaintiff under the deed has been lost by neglecting to exercise it. A right may be lost in this way; but it certainly cannot be so lost in a shorter period than a right of this nature could be acquired by a reverse occupancy, viz. twenty-one years. There are two facts pertinent to this point, about which there is no dispute. First, the date of the grant, February 22d, 1813. Second, that on the 3d of December, 1833, the plaintiff erected the dam which the defendant removed nearly a year afterwards. The interval is less than twenty-one years. Besides, there is evidence that previously, this plaintiff had erected a dam, which was removed by some persons not known. There is evidence also to show that a dam was built by Samuel Dyer, which must have been after the death of Jos. Dyer, Senr., which happened probably not long before the probate of this will, viz. 7th February, 1815. But whether the dam erected by Samuel Dyer, and the race connected with it, transmitted the water to the plaintiff's land, is a question of fact to be determined by the testimony. The witnesses do not entirely agree, as to the fact, whether the water passed the line of Depui's land at any time. If you find that at any time the water was conveyed to the plaintiff, either by the old dam, or by Samuel Dyer's dam and the race, whether the race terminated in Chappell's land, or extended to the line, and thereby served Mr. Depui for the purposes of irrigation, it would go to diminish the alleged period of non-user under the deed which was executed, as has been said, less than twenty-one years before December, 3d, 1833. Another point made by the defendant is, that he has acquired a right adversely to the plaintiff, to have the water flow along his land, through the natural channel. If the defendant had erected a mill, or had made any other exclusive use of the water flowing along the natural channel during twenty-one years since the date of the plaintiff's deed, this point might arise. Or even if there were evidence, that twenty-one years before Mr. Depui erected the

dam, and subsequently to the grant, the defendant had cleared his lot below the road, and drained it, and converted it to purposes of cultivation, it might be necessary to consider this point. But there is no evidence when this lot below the road was cleared, nor is the interval between the date of the grant to the plaintiff, and the building of the dam by him, twenty-one years. It is not necessary to consider this question therefore. Another point is made, viz.: that the plaintiff exercised his right in an unlawful manner, and to the nuisance of the defendant. The nuisance complained of, is the injury done to the lot of defendant below the Horsham road. Upon this point I have merely to say, that if the plaintiff did no more than exercise the right granted to him by the deed, in a reasonable and proper manner, for his own benefit, the damage complained of gave the defendant no right to abate the dam as a nuisance to him. I have already stated to you the legal effect of the grant. The plaintiff had the right to conduct the water from the line of his land to his barn, or to distribute it over his farm according to his own views of his interests, or the customary rules of husbandry, but he had not a right wantonly to exercise this privilege for the purpose of injuring the defendant. If the evidence proves that what the plaintiff did was necessary, or conducive to his receiving the full and convenient benefit of the right granted to him, the detriment which the defendant suffered, he was obliged to bear; or to provide against it by the ditches along the road, or across his land, or in such other way as the situation of the place would allow. On the other hand, if the plaintiff, under pretence of his right, wantonly constructed any thing on his own land not for the convenient and reasonable exercise of the right, to the injury of the defendant's land, that construction would be a nuisance; but Mr. Dyer's right in such case, would be to remove the thing which caused the nuisance, not to remove any other construction which was lawfully made. His right to abate extended only to the thing, or part of the thing, which caused the nuisance, not to the part which was lawful and proper. The law in a few cases gives this right of redress; but in exercising it, a man must be careful not to do more than the law would do for him. In this case, the defendant abated the dam; but if the dam was erected at the right place, and was of such height only, as was necessary to give effect to the intention of the grantor, the defendant had no right to abate it, even if the plaintiff had connected with it some other construction, which was a nuisance. If the dam was higher than needful for this purpose, and if in consequence of the excess of height, it diverted more water than was necessary, and so much as to be hurtful to the defendant's land below the road, the defendant might lawfully have reduced the dam to the necessary height. I will now call your attention to the questions of fact, about which you are to inquire. Dismiss from your consideration, the rights of all other persons owning land

(Dyer *v.* Depui.)

on this stream.    It will be time enough to inquire whether such persons are injured when they complain.    You will then inquire,— First, whether the dam erected by Depui, was in the same place as the original dam?    If it was, the defendant cannot complain on that score.    Secondly, if the dam was erected at a different place, then inquire whether the place was changed with the consent or assent of the defendant.    The defendant says, the three dams were on three different foundations, and that the plaintiff changed the place for his own benefit, and against his (the defendant's) will. The plaintiff contends that it was erected on the old foundation: but if it was not, yet the defendant assented to the change of the plan; and he relies on the fact, that he acquiesced in the change of place made by Samuel Dyer, to show that the defendant considered a slight variation of no importance; and also upon a declaration of the defendant which he contends he has proved, that he knew the plaintiff had a right, but not to conduct the water as he did.    This fact is for you to determine.    If the dam was erected at a different place, against the defendant's will, he had the right to take it down.    If on the same place, or at a different place, and there is evidence to satisfy you that the defendant assented to it, then he had no right to remove it.    If you find for the plaintiff on these points, then you will proceed to the defendant's part of the case,—the facts of *non user* and adverse occupancy.    The plaintiff admits that twenty-one years *non user* or adverse enjoyment would defeat his right; but he denies the fact of *non user* during so long a period.    The defendant has requested the Court to charge that the presumption to defeat the right, does arise from *non user,* during a less period than twenty-one years; but less than twenty-one years is certainly insufficient for this purpose.    The defendant has also requested the Court to charge, that there is no evidence that the defendant assented to a change of the foundation of the dam; but I cannot say that there is no evidence upon this point. If you should find for the plaintiff, you will also assess such damages as the plaintiff, in your judgment may be entitled to, under all the circumstances of the case.

The jury found a verdict for the plaintiff, with three hundred dollars damages, and the defendant's counsel having excepted to to the charge, took this writ of error, and filed the following exceptions.

" 1. Because the judge told the jury that the construction given by the defendant below, was unreasonable, inasmuch as the defendant below did contend that the grant had respect to the dam as it stood, and the water-course as it actually existed at the date of the deed, (22d February, 1813.)

Because he contended that the water-course terminated in

(Dyer v. Depui.)

the tract now owned by John Chappell, and before it reached Depui's land.

Because he contended that the plaintiff had no right to have the water-course extended further; and that the only right which the plaintiff below acquired by deed, was to enter upon the land where it terminated, and take the water out of the trench there.

Because he contended that to that place the plaintiff below must go for water—that he might drive his cattle there to drink, but that he had no right to conduct the water further.

Because the judge told the jury that the plaintiff below had a right to conduct the water from the line of his land to his barn, or to distribute it over his farm, according to his own views of his interests.

2. Because the judge told the jury that the phrase in the deed, " together with the privileges of part of the water," were very inapt to express the grant of a right to water cattle at the end of the water-course, or to dip it out at the place and carry it away, as has been contended.

3. Because the judge told the jury, that the question, whether the dam erected by the plaintiff was of greater height than the dam which existed at the date of the grant, was unimportant, and that it could not reasonably be supposed, that the height of the dam entered into the contemplation of the parties.

4. Because the judge told the jury that the right of the plaintiff below could not certainly be lost by non-user in a shorter period than a right of this nature could be acquired by adverse occupancy, viz., twenty-one years: whereas, the evidence showed that there had been a non-user by plaintiff below of twenty years, which was sufficient to bar the right.

5. Because he told the jury, that if the evidence prove that what the plaintiff did, was necessary or conducive to his receiving the full and convenient benefit of the right granted to him, the detriment which the defendant suffered he was obliged to bear.

6. Because when requested by the defendant below to charge that the presumption to defeat the right does arise from non-user during a less period than twenty-one years, the judge said that less than twenty-one years was certainly insufficient for this purpose.

7. Because when requested by the defendant below to charge that there is no evidence that the defendant assented to a change of foundation of the dam, the judge said, ' I cannot say that there is no evidence on this point.' And the plaintiff in error alleges there was such evidence."

(Dyer *v.* Depui.)

Mr. *H. Hubbell* and Mr. *Randall* for the plaintiff in error, cited *Strickler* v. *Todd*, (10 *Serg. & Rawle*, 63.) *Baldwin* v. *Collins*, (10 *Wend.* 167.) *Stiles* v. *Hooker*, (7 *Cowen*, 266.) *Hewlins* v. *Shippan*, (5 *Barn. & Cres.* 221; 11 *Eng. Com. Law Rep.* 207.) *Butz* v. *Ihrie*, (1 *Rawle*, 218.) *Lefevre* v. *Lefevre*, (4 *Serg. & Rawle*, 241.) 3 *Bac. Abr.* 398, *tit. Grant. Mason* v. *Hill*, (5 *Barn. & Adolph.* 1; 27 *Eng. Com. Law Rep.* 1.) *Mason* v. *Hill*, (3 *Barn. & Adolph.* 304; 23 *Eng. Com. Law Rep.* 76.) *Saunders* v. *Newman*, (1 *Barn & Ald.* 250.) *Moore* v. *Rawden*, (3 *Barn. & Cres.* 339; 10 *Eng. Com. Law Rep.* 99.) 3 *Campb.* 514. *Pentman* v. *Smith*, (4 *East*, 107.) *Hooker* v. *Bray*, (10 *Wend.* 260.) *Hughes* v. *Herser*, (1 *Binn.* 463.) *Commonwealth* v. *Passmore*, (1 *Serg. & Rawle*, 219.) *Hepburn* v. *M'Dowell*, (17 *Serg. & Rawle*, 383.) *M'Calmont* v. *Whitaker*, (3 *Rawle*, 84.) *Angel on Water Courses*, 50, 63. *Nitzell* v. *Paschall*, (3 *Rawle*, 76.) *Nichol* v. *M'Farlane*, (3 *Watts*, 166.) *M'Killip* v. *M'Ilhenny*, (4 *Watts*, 317.) *Haight* v. *Aqueduct Co.*, (4 *Wash. C. C. Rep.* 601.) *Congleton* v. *Patterson*, (10 *East*, 130.) 2 *Danv.* 233. *Pastorius* v. *Fisher*, (1 *Rawle*, 27.) *Hepburn* v. *M'Dowell*, (2 *Rawle*, 82.) *Tyler* v. *Wilkinson*, (4 *Mason*, 401.) 3 *Bl. Comm.* 5. 5 *Bac. Abr.* 152. 16 *Vin. Abr. Nuisance, U. pl.* 3. 12 *Mod.* 510. *Howell* v. *M'Coy*, (3 *Rawle*, 269.)

Mr. *Mallery*, contra, cited *Cooper* v. *Smith*, (9 *Serg. & Rawle*, 33.) *Worrall* v. *Rhodes*, (2 *Wharton's Rep.* 427.) *Yeakle* v. *Nace*, (2 *Wharton's Rep.* 123.) *Beidelman* v. *Foulk*, (5 *Watts*, 308.) *Hoy* v. *Sterrett*, (2 *Watts*, 327.)

The opinion of the Court was delivered by

SERGEANT, J.—This was an action on the case brought by Moses Depui against Joseph Dyer, for pulling down and destroying a dam, which had been erected by the plaintiff on the land of the defendant, for the purpose of turning upon the plaintiff's land, a stream of water which naturally flowed in another direction. The plaintiff claimed the right to erect the dam, and to cut a trench on his own land, and open one on the land of an intervening neighbour (Chappell,) so as to conduct the water thus diverted by means of the dam, to his farm and dwelling, there to use it for the various purposes of husbandry.

At and before the 22d of February, 1813, Joseph Dyer, sen., was the owner of a large tract of land, partly in Philadelphia and partly in Montgomery county. A dam had previously been erected on his land by which the water was diverted. On that day he conveyed to the plaintiff Moses Depui, forty-two acres sixty-one perches: " together with the privilege of a part of the water flowing along a certain ditch or water course from John Hogeland's land through and across the said Joseph Dyer's other land, on con-

dition that the said Moses Depui, his heirs or assigns, will at all times be subject to and defray one half the expenses of keeping or repairing the dam, and clearing out the said ditch or water-course," " to have and to hold the said tract or parcel of land above described, with the privilege of part of the water as aforesaid."

On the 7th of February, 1815, his will dated the 9th of January, 1813, was proved. He devises to Samuel Dyer a tract of land (since John Chappell's,) lying between the plaintiff's land and the defendants, "together with a dam or water-course from John Hogeland's line through and across the lot of land hereinafter devised to my son Joseph Dyer, as the same now runs, with a privilege on each side of said drain or water-course, one perch in width, for passing and repassing to mend, repair and clean out said drain or water-course, as often as the same may be necessary, without any let or hindrance of him the said Joseph Dyer, his heirs or assigns, with the water drain and privilege aforesaid to him the said Samuel Dyer, and his heirs and assigns forever, from and after the 1st day of April, 1817, (till which time it was devised to testator's widow,) and subject to the water drain now open and running through and across the first mentioned lot to Moses Depui's line."

He then devised to the defendant Joseph Dyer another portion of land adjoining, " and subject to the aforementioned drain or water-course from John Hogeland's line through and across the first mentioned lot of land, with the privilege granted to my son Samuel Dyer, his heirs and assigns, of a passage or cart way one perch wide on each side of said drain, for clearing and repairing the same."

Much parol evidence was given to show the times when the dam was built or renewed, its size and heighth, and the nature and extent of the drain or water-course, as well as the situation in which it had been for twenty years before the bringing of this suit; for all of which, I refer to the evidence and the charge of the Court: the latter supplying (by admission of counsel) some deficiencies in the former, occasioned by the loss of the original notes of the judge who tried the cause.

The first and principal question raised by the defendant below is, what was the nature and extent of the right granted by Joseph Dyer, sen. to the plaintiff by the deed of the 22d of February, 1813. The defendant contends, that it conveyed to him no more than a right to use the water exactly as it then was; and he alleges that the dam then extended only to within a hundred and fifty yards of the plaintiff's line: and that he therefore had no right to go upon Chappell's land and cut a drain up to his line and beyond it through his land. On this point however, the evidence is by no means clear. Some of the witnesses speak of the trench as running up to the plaintiff's line: and the words of the will of Joseph Dyer, sen. under which the defendant claims, expressly describe it as running through and

across the first mentioned lot to Moses Depui's line.   The defendant further says that this grant is no more than the  privilege of watering cattle, which the plaintiff could exercise by driving them into the ground now Chappell's; but the grant is not restricted to the watering of cattle.   It is a general privilege of a part of the water; and as there is no limit or restriction placed upon it, it must be construed most beneficially for the grantee, especially as he·is subject to the onerous burthen of paying one half the expense of keeping up the dam and cleaning out the drain.   Water is useful and necessary to a farm for various purposes, besides merely watering cattle; and we think it was a right to use a portion of the water in the way it is customary and necessary to use it for the benefit of the land conveyed.   If to do so it was necessary to conduct it on and along the plaintiff's farm by a trench, if that was the only way in which he could beneficially use the privilege, he might cut the trench and conduct the water, and might renew and repair the dam for the purpose.   It is evident that the grantor and grantee thought it an important privilege; and the grantor has with scrupulous justice fortified and secured it by various clauses in his will, when he came to divide his land among his children, expressly making their devises subject to this privilege, and even giving to his son Samuel, (of whom Chappell bought,) the right of a perch in width on each side of the drain in the defendant's land for passing and repassing to make the necessary repairs in the drain and cleaning it out.   Afterwards in the devise to Joseph Dyer, the defendant, the testator makes his land subject to the drain and to the privilege of a passage for cleaning and repairing it.   Under these grants and liabilities the defendant holds; and they show the clear understanding and determination of the testator, that this drain was to subsist and remain in perpetuum as a matter of importance to the enjoyment of the properties by the respective owners. For an abuse of the privilege, by which an injury would be sustained by any one person, such person has his remedy by action, or by exercising his summary power of abating the nuisance, in the manner however, and to the extent only which the law allows.

The next allegation of the defendant is, that the judge erred in declining to tell the jury that there was no evidence that the defendant assented to a change of the foundation of the dam.   There is certainly something of that kind stated in the charge of the Court to have been relied upon by the plaintiff.   The judge says, "the plaintiff relies upon the acquiescence of the defendant in the change of place made by Samuel, to show that the defendant considered a slight variation of no importance; and also upon a declaration of, the defendant which he contends he has proved, that he knew the plaintiff had a right, but not to conduct the water as he did."   In .a case where the notes of the evidence have been mislaid, and it is admitted that the evidence which the judge states in his charge is

(Dyer *v.* Depui.)

to be taken as correctly stated, the plaintiff has a right to insist that there is here some evidence, however slight, and that the judge could not truly say there was none.

Another point which has been strongly pressed is, that the judge erred in what he said as to the heighth of the dam, viz. that even if it was higher than the original dam, to the injury of the defendant, the latter had the right only to reduce it to its proper height, but not entirely to demolish it. But this doctrine is certainly that both of reason and authority. The party exercising the right to abate a nuisance, can only remove or take away so much as constitutes the nuisance. He cannot destroy other erections which are innocent and lawful, merely because they happen to be connected with the injurious part. The common law is conservative in its chaarcter, and does not authorise the wanton destruction of property. In *Cooper* v. *Marshall*, (1 *Burr*. 259,) it was decided that a commoner cannot destroy the lords' conies and their burrows because they are in excess. You can, says Denison, J., at the utmost only abate so much of the thing as is a nuisance. You cannot destroy the whole, (which is the right here denied,) but only so much of the thing as makes it a nuisance. In Sir J. Strange, 688, in the case of *Rex* v. *Papineau*, Lord Chief Justice Raymond expressly declares so. Suppose a man builds his house so high as to be a nuisance to his neighbour by obstructing his lights, or in any other respect arising from its excess, you can't destroy the whole house, but only so much of it as by its excess above what is allowable constitutes the nuisance.

The defendant further contends that the plaintiff even though originally entitled had lost his right by non-user for twenty years; and assigns for error that the judge charged that the presumption to defeat such right does not arise from a non-user for a less period than twenty-one years.

In this position we think the Court below was right, and that the rule on the subject in Pennsylvania is founded in the analogy to our act of limitations of 1785, in relation to lands, which fixes the period of twenty-one years; in the same manner as in England the rule is established by analogy to their statute of limitations of 21 Jac. 1, c. 16, relating to lands there. There are undoubtedly to be found scattered through our reports dicta of some of the judges of this Court at variance with this doctrine; but these expressions have been used in cases where the exact time is not material in the cause, and it was not therefore necessary to be precise in language.

Judgment affirmed.